IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 20-91 |
| | ) |
| SAMUEL BROOKS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**OPINION**

I. Introduction

Pending before the court is a motion for compassionate release (ECF No. 69) filed pro se by defendant Samuel Brooks ("Brooks"). Pursuant to its standing order, the court appointed counsel to review the motion and determine whether a supplement should be filed by counsel. Counsel filed a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and a supplemental character letter (ECF Nos. 71, 72). The government filed a response, representing that Brooks will soon be transferred to the custody of the Bureau of Prisons ("BOP") and opposing relief on substantive grounds (ECF No. 82). The government provided exhibits and medical records under seal (ECF No. 81). Counsel for Brooks filed a reply on April 9, 2022 (ECF No. 84), and the motions are ripe for disposition.

II. Procedural Background

In Crim. No. 14-131, Brooks pleaded guilty to conspiracy to distribute 100 grams or more of heroin from June 2013 to May 2014. Brooks was sentenced to a term of imprisonment of 60 months, to be followed by 4 years of supervised release. Brooks served his prison term and began his term of supervision on October 5, 2017. In February and May, 2018, the probation

1

office notified the court that Brooks tested positive for marijuana.

On November 7, 2018, the government filed a criminal complaint, charging Brooks with possession with intent to distribute heroin and fentanyl. The probation office filed a motion to revoke Brooks' supervised release at Crim. No. 14-131. Multiple extensions of time were granted, at the request of the parties. In May 2020, Brooks was indicted by the grand jury at Crim. No. 20-91.

On July 22, 2021, the court held a consolidated plea and sentencing hearing at Crim. No. 20-91, and a revocation of supervised release hearing at Crim. No. 14-131. Brooks pleaded guilty to count 1 of the Indictment at Crim. No. 20-91, which charged him with possession with intent to distribute 40 grams or more of fentanyl, on November 6, 2018, a violation of 21 U.S.C. 841(a)(1) and (b)(1)(B)(vi). In the Rule 11(c)(1)(C) plea agreement, the parties stipulated and agreed that the appropriate sentence at Crim. No. 20-91 was a term of imprisonment of 5 years, followed by a term of supervised release of 4 years, no fine, and a $100 special assessment. The government also agreed to not file a § 851 Information about a prior conviction, which would have increased the applicable statutory mandatory minimum sentence to 10 years in prison. The court accepted the Rule 11(c)(1)(C) plea agreement and imposed the agreed-upon sentence. The term of imprisonment was at the low end of the advisory guideline range of 60-71 months and reflected the statutory mandatory minimum. On July 22, 2021, the court also revoked Brooks' supervised release at Crim. No. 14-131 and sentenced him to 18 months of imprisonment, to run concurrent with the prison term imposed at Crim. No. 20-91. Brooks has been detained since November 2018.[1]

Brooks is 35 years old and is currently incarcerated at Northeast Ohio Correctional

---

[1] Brooks did not file a motion for compassionate release at Crim. No. 14-131, but it appears his prison term at that case is completed.

Center ("NEOCC"). The parties did not provide any information about the current status of the COVID-19 pandemic at NEOCC. The court was unable to locate any officially-reported data about the number of inmates or staff members currently testing positive for the COVID-19 virus at NEOCC.[2] The court takes judicial notice that in March 2022, CoreCivic, the operator of NEOCC, lifted its ban on travel and non-critical training in light of declining case numbers nationwide, although masking, social distancing, and other precautionary protocols will still be enforced in CoreCivic facilities. https://www.corecivic.com/covid-19-response/weekly-updates, last visited April 14, 2022.

Brooks was vaccinated against the COVID-19 virus, receiving two doses of the Pfizer Vaccine (ECF No. 81-2 at 1). Brooks did not present any evidence about the impact of his vaccination on his risk of contracting the Covid-19 virus or his risk of experiencing severe symptoms if he does get infected.

Brooks contends that he is vulnerable to severe illness and death if exposed to COVID-19 due to: (1) asthma; and (2) high blood pressure. Brooks did not submit medical records, but the government did. (ECF No. 81-2). The medical records submitted by the government reflect that Brooks has mild, intermittent asthma, for which he was provided 2 inhalers. (ECF No. 81-2 at 41). Mild, intermittent asthma is not listed by The Centers for Disease Control ("CDC") as a risk factor for COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last visited April 14, 2022 (identifying asthma as a risk factor "if it's moderate to severe."). The medical records submitted by the government reflect that Brooks is not diabetic or hypertensive. (ECF No. 81-2 at 41). A handwritten sticky note reflects that Brooks does not have high blood pressure. (ECF No. 81-2 at 1). On June 8,

---

[2] The Covid Prison Project reported no active cases among inmates at NEOCC as of April 7, 2022. https://covidprisonproject.com/data/ohio/, last visited April 14, 2022.

2021, Brooks' blood pressure (sitting) was 110/68 and his blood pressure (standing) was 130/72. (ECF No. 81-2 at 37). Brooks' counsel did not challenge the accuracy of these records or submit contrary medical evidence in his reply.

III. Discussion

A. Exhaustion of administrative remedies

As an initial matter, Brooks is unable to access his administrative remedies and, therefore, the court will address Brooks' requests for compassionate release on the merits. As of the date of this opinion, Brooks remains located at NEOCC. https://www.bop.gov/mobile/find_inmate/index.jsp#inmate_results, last visited April 19, 2022. The government represents that Brooks will "soon" be delivered to FCI-Fort Dix, but the airlift that was scheduled to take him there was cancelled (ECF No. 82 at 3). Because Brooks is not in BOP custody, he is unable to seek compassionate release through the administrative process. *See United States v. Hammond*, No. CR 18-184, 2020 WL 2126783, at *1 (W.D. Pa. May 5, 2020) (no failure to exhaust administrative remedies where inmate is not in the BOP's physical custody and the BOP's administrative remedies are not available to him).

B. Applicable Law

Brooks seeks compassionate release from imprisonment. A district court has only limited authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of

4

sentences") (quoting <u>Dillon v. United States</u>, 560 U.S. 817, 824 (2010)).

Section 3582(c)(1)(A) provides:

**(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case--

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The statute sets forth a three-step analysis for district courts to utilize to resolve a motion for compassionate release. The Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release … if it finds that … extraordinary and compelling reasons warrant such a reduction.'" <u>United States v. Pawlowski</u>,

967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[B]efore granting compassionate release," however, "a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). The court must also consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A). United States v. Andrews, 12 F.4th 255, 258 (3d Cir. 2021) (prisoner's compassionate release motion "may be granted if the court finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable.").

Based upon the foregoing, to grant Brooks compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors;[3] and (3) compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

---

[3]   The factors set forth in 18 U.S.C. § 3553(a) are:
   – the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);
   – the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);
   – the sentencing range established by the Sentencing Commission, § 3553(a)(4);
   – any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);
   – the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and
   – the need to provide restitution to any victims of the offense, § 3553(a)(7).

Brooks bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce evidence to the court. See e.g., United States v. Matthews, Crim. Action No. 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, Crim. Action No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); United States v. Richardson, Crim. No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

### C. Extraordinary and Compelling Reasons

#### 1. General Background

Prior to the enactment of the First Step Act on December 21, 2018, only the Director of the BOP could file a motion for a sentence reduction under §3582(c)(1)(A)(i). Ray v. Finley, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended § 3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts administrative remedies. Id.

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." Adeyemi, 2020 WL 3642478, at *7 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." United States v. Handerhan, No. 19-1904, 789 F. App'x 924, 925 (3d Cir. 2019) (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That commentary currently lists four categories of such reasons: (1) the defendant's medical

condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." Id. (quoting U.S.S.G. § 1B1.13 cmt. n.1.). The court in Adeyemi explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia, or those suffering from medical conditions, impairments, or deteriorations due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old, experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less….The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or children died or became incapacitated or where the incarcerated person's spouse became incapacitated and he is the only available caregiver for the spouse.

Adeyemi, 2020 WL 3642478, at *7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

In Andrews, the court of appeals held that district courts are not strictly bound by the policy set forth in the sentencing guidelines. Andrews, 12 F.4th at 259. On the other hand, the district court "did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'" Id.

> The court in Somerville provided a helpful working definition:
>
> The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); see also *Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").
>
> The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); see also *Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").
>
> Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of

prison) and significant (i.e., serious enough to make release appropriate). Somerville, 2020 WL 2781585, at *7.

### 2. Consideration of COVID-19

In Somerville, the court concluded that "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a ***uniquely high risk*** of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Somerville, 2020 WL 2781585 at *4 (emphasis added). That test must be modified in light of the COVID-19 vaccinations that are occurring. Even if an inmate has serious underlying medical conditions and faces a non-speculative risk of exposure to the COVID-19 virus, the vaccine may prevent that inmate from contracting the virus or significantly reduce that inmate's risk of infection or reinfection. United States v. Rhodes, No. CR 15-23, 2021 WL 4460031, at *4 (W.D. Pa. Sept. 29, 2021).

The court, therefore, needs to determine whether Brooks set forth extraordinary and compelling reasons for his compassionate release based upon his asserted medical conditions and the situation at NEOCC – taking into account his vaccination. Brooks has the burden to produce evidence to show that: (1) he faces a uniquely high risk of grave illness or death if infected or reinfected by the COVID-19 virus, considering his underlying medical conditions and age and the protective effects of the vaccine; and (2) he faces a non-speculative risk of contracting or recontracting the COVID-19 virus, considering both the risk of exposure at NEOCC and the preventative effects of the vaccine.

a. Whether Brooks faces a uniquely high risk of grave illness or death from being reinfected by the COVID-19 virus

In his motion, Brooks contends that he has a uniquely high risk of grave illness or death from the COVID-19 virus due to his preexisting medical conditions of asthma and high blood pressure (ECF No. 71 at 2). The medical records provided by the government (and not contradicted by Brooks) reflect that Brooks has only mild, intermittent asthma, which is not listed as a COVID-19 risk factor by the CDC. Brooks' asthma is being appropriately treated at NEOCC by providing him with two inhalers. The medical records provided by the government reflect that Brooks does not have high blood pressure, diabetes or hypertension. Brooks failed to provide any contrary evidence and did not dispute those medical records in his reply brief. Brooks is only 35 years old. In summary, Brooks did not demonstrate that he has any risk factors that would indicate he faces a uniquely serious threat from the COVID-19 virus. In addition, because Brooks is vaccinated his risk of severe illness from the COVID-19 virus is substantially mitigated. The court concludes that Brooks did not meet his burden to demonstrate extraordinary and compelling reasons for compassionate release.

The medical records reflect that Brooks is, in fact, receiving proper medical treatment for his preexisting conditions. Those conditions do not prevent Brooks from providing self-care in the correctional environment and do not warrant compassionate release. There is no evidence that the prison environment exacerbates Brooks' conditions and it appears that he would experience the same symptoms if he were released. Under the present circumstances, Brooks' medical conditions do not warrant compassionate release.

The court concludes that, based on this record, because Brooks is now vaccinated he cannot establish that he faces an extraordinary or compelling risk from the COVID-19 virus. "Although vaccines are not one hundred percent effective, the CDC states that '[c]urrently

authorized vaccines in the United States are highly effective at protecting vaccinated people against symptomatic and severe COVID-19.' Vaccines are particularly effective at preventing 'severe illness and death.'" United States v. Singh, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) (concluding that recent vaccination mitigated risk to such an extent that COVID-19, in combination with defendant's underlying conditions, no longer presented an extraordinary and compelling reason to grant compassionate release). In Singh, the court recognized that the inmate in that case had underlying medical conditions which ordinarily would have established grounds for compassionate release. The court concluded, however, that vaccination mitigated those risks. Id. at *3. The court's conclusion was "in accord with the vast majority of courts that have considered this issue." Id. (citations omitted).

In other words, the decisions teach that because Brooks is vaccinated, he faces a reduced risk that: (1) he will contract the COVID-19 virus; and (2) if he is infected, he will experience severe symptoms. In Singh, the court emphasized that an inmate bears the burden to demonstrate that compassionate release is warranted and denied the motion without prejudice to the inmate's opportunity to file a new motion supported by evidence that the vaccine would not mitigate a substantial risk of serious illness from a COVID-19 infection. Id. at *4.

In this case, Brooks similarly failed to meet his burden to demonstrate that he continues to face a substantial risk from the COVID-19 virus despite his vaccination. Brooks did not provide any evidence that he has any risk factors or address the impact of his vaccination. While there are certainly still unknowns about the vaccine administered to Brooks, it appears that Brooks' risks of (1) being infected by COVID-19, and (2) suffering severe illness if he is infected, are speculative because of his vaccination. On this record, the court concludes that Brooks failed to meet his burden to show extraordinary and compelling reasons for

11

compassionate release due to the COVID-19 virus.

        b. Whether Brooks faces an actual, non-speculative risk of contracting the COVID-19 virus at NEOCC

As noted above, there is no evidence in this record of any current cases of COVID-19 infection among the inmates at NEOCC. The court recognizes that it is difficult to engage in social distancing and other mitigation efforts in a congregate setting such as a prison. On the other hand, many inmates (including Brooks) and staff members have now been vaccinated for COVID-19. Vaccination of all or substantially all inmates and staff will limit the spread of the virus and reduce the risk of exposure. As noted above, even if Brooks is exposed to the COVID-19 virus, it appears that he will be far less likely to be infected or suffer serious symptoms due to his vaccination. In sum, it would be speculative at this point for the court to conclude there is an actual risk that Brooks, after his vaccination, will be infected by the COVID-19 virus at NEOCC.

        c. Conclusion about COVID-19

Because Brooks received the two doses of the Pfizer vaccine and does not have any serious risk factors, the court cannot find that he met his burden to establish that he is at "*uniquely* high risk" of being infected with the COVID-19 virus or experiencing serious illness if he is infected with the COVID-19 virus. To conclude otherwise would be speculative, based upon the record before this court. In sum, Brooks did not show an extraordinary and compelling reason for his compassionate release.

### 3. Section 3553(a) factors

Even assuming, arguendo, that Brooks articulated extraordinary and compelling reasons, the court would deny his motion. The compassionate release statute states that a court may reduce the term of imprisonment "after" it considers the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. 18 U.S.C. § 3582(c)(1)(A). Even if Brooks

established an extraordinary or compelling reason for release, release must also be consistent with the § 3553 factors and guidelines policies. The court recognizes that the conditions of Brooks' confinement have been more onerous than anticipated due to the COVID-19 virus.

The government emphasizes that Brooks poses a danger to the community if released. The "danger to the community" policy consideration in U.S.S.G. § 1B1.13 is somewhat similar to the § 3553(a)(2)(C) sentencing factor that a sentence "protect the public from further crimes of the defendant." The government argues that Brooks remains a danger to the community based on the seriousness of his crime of conviction (large-scale fentanyl trafficking) and his criminal history (particularly, his involvement in prior drug trafficking) and the commission of this offense while on supervised release. The government also notes the reports from the probation office that Brooks violated the conditions of his supervision by using drugs.

The court weighed the § 3553(a) factors in imposing the original sentence and deciding whether to adopt the parties' Rule 11(c)(1)(C) plea agreement. At that time, the court recognized that Brooks engaged in a serious drug offense. The court recognized that the term of imprisonment imposed was at the low end of the otherwise-applicable advisory guideline range and reflected the statutory mandatory minimum. Brooks received a significant benefit from the government's agreement to not file a § 851 Information, which would have increased the mandatory minimum sentence to 10 years in prison.

Brook received another benefit with respect to the prison term imposed for his supervised release violation at Crim. No. 14-131. Pursuant to the sentencing guidelines: "Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of

the revocation of probation or supervised release." U.S.S.G. § 7B1.3. The court, however, imposed Brooks' sentence at Crim. No. 14-131 to run concurrent with the prison term at Crim. No 20-91.

Upon reexamining the § 3553(a) factors, the court adheres to its determination that a term of imprisonment of 60 months is warranted. Indeed, in the plea agreement, Brooks and the government agreed that term of imprisonment was the appropriate sentence. A reduction of his sentence would not be consistent with the statutory sentencing purposes of just punishment, deterrence to criminal conduct and protection of the public from further crimes by the defendant. A reduction in his prison term below the statutory mandatory minimum would create unwarranted disparities with similarly situated defendants. In sum, the court reaffirms that a term of imprisonment of 60 months is sufficient, but not greater than necessary, to accomplish the sentencing purposes.

15

## V. Conclusion

Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case. Here, Brooks did not satisfy his burden under § 3582(c)(1)(A) to show that an extraordinary and compelling reason warrants his compassionate release from imprisonment. Even assuming Brooks met that burden, compassionate release is not appropriate after consideration of the policies and § 3553(a) factors. His motions for compassionate release (ECF Nos. 69, 71) will, therefore, be denied. The denial is without prejudice in the event Brooks' circumstances or the conditions at his place of confinement change.

An appropriate order will be entered.

Dated:	April 20, 2022.

BY THE COURT:

s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge
